William Byron HOLLIS, Jr., Appellant,

v.

The STATE of Texas, Appellee.

No. 12–81–0033–CR.

Court of Appeals of Texas, Tyler.

May 27, 1982.

Paul Tatum, Holt, Tatum & McCarver, Nacogdoches, for appellant.

Herbert Hancock, Dist. Atty., Martha J. Sullivan, Asst. Dist. Atty., Nacogdoches, Robert Huttash, State Pros. Atty., Austin, for appellee.

McKAY, Justice.

This is an appeal from a conviction for the offense of murder. The jury set punishment at life imprisonment.

Appellant William Byron Hollis, Jr. was convicted in Cause No. 11,332–80–2 of murder upon his plea of not guilty. Prior to trial, a hearing before a jury was held to determine defendant's mental competence. Defendant was found competent to stand trial, and a trial on the merits before a second jury was held on July 9, 1980. From a conviction defendant has perfected this appeal.

Appellant's first three grounds of error relate to statements made by the District Attorney in jury argument.

The first ground of error arises from a statement made by the District Attorney during the guilt/innocence stage of the trial. The District Attorney, referring to defendant, stated: "And, I have as a prosecutor never heard a man from the witness stand that had killed—" At this point counsel for appellant objected and the trial judge sustained the objection. The trial court instructed the jury to disregard the District Attorney's statements, but declined to grant appellant a mistrial.

Appellant contends that the statement "and—killed . . . ." was so inflammatory and prejudicial that it requires reversal. We do not agree. The test of whether the prosecutor's argument necessitates reversal is to be made upon the basis of its probable effect on the minds of the jury under the facts of each case. *Mayberry v. State*, 532 S.W.2d 80, 85 (Tex.Crim.App. 1976). The record reflects that defendant testified at trial and admitted he killed the

deceased. From the incomplete statement objected to, the jury can draw no real inferences. It is not even clear whether the District Attorney was referring to appellant's actions in killing the deceased or to appellant's demeanor on the stand. The court in *Blansett v. State*, 556 S.W.2d 322, 328 (Tex.Crim.App.1977) stated:

Ordinarily, any injury from improper jury argument is obviated when the court instructs the jury to disregard the argument, unless the remark is so inflammatory that its prejudicial effect cannot reasonably be removed by such an admonition.

We do not believe that the prosecutor's incomplete statement was so prejudicial as to be incurable. Appellant's first ground of error is overruled.

Appellant's second ground of error concerns the District Attorney's summation of the State's case. The District Attorney stated:

And look at that evidence. Listen to what counsel has to say about this case, cause he's going to pour whiskey all over every witness he possibly can. He's going to pour whiskey over the deceased. And's going to try everybody in this case except the man that did the killing. And I promise you that without any doubt because when you ain't got the facts on your side you try somebody else.

Counsel for appellant objected that this statement was an improper attack on appellant through counsel. The trial court overruled appellant's objection. This argument, in our opinion, is not an attack upon defense counsel, but is a reasonable deduction from the evidence introduced by and defensive strategy of appellant. Counsel for appellant, both on cross-examination of the State's witnesses and direct examination of appellant's witnesses, attempted to portray the deceased and his friends as intoxicated, loud, and provocative. Furthermore, even if the District Attorney's statement was improper we do not believe that it was so extreme or manifestly improper as to require reversal. *Todd v. State*, 598 S.W.2d 286, 297 (Tex.Crim.App.1980). Ap-

pellant's second ground of error is overruled.

Appellant's third ground of error arises from the District Attorney's argument in the punishment phase of the trial. The District Attorney told the jury: "He ought never be able to get out in the street again and kill anybody else. This man is calculated . . . ." Appellant's counsel objected to the statements and the trial court instructed the jury to disregard them.

In *Livingston v. State*, 531 S.W.2d 821 (Tex.Crim.App.1976), the District Attorney stated in argument that if the defendant were permitted to remain at large he might "very well go out and kill someone." *Id.* at 823. The Court of Criminal Appeals held that even if the statement was improper, the court's instructions to disregard cured any harm. *Id.* We believe the same is true in the instant case, and overrule appellant's third ground of error.

Appellant's next two grounds of error relate to the competency hearing. Prior to the trial on the merits, a separate jury trial was conducted upon appellant's competence to stand trial, in compliance with Art. 46.02 (Tex.Code Crim.Pro.Ann.1979). The jury found defendant competent to stand trial.

Appellant first contends the trial court erred during the competency trial in failing to grant defendant's motion for mistrial and instructed verdict, after the jury heard testimony over defendant's objection, concerning the criminal offense with which appellant was charged. Appellant submits the court erred in allowing the State to ask a witness about the particular facts of the crime, and that this error adversely affected the determination of competency by confusing the jury with extraneous facts and by arousing unfair prejudice against the accused. *See Ex parte Locklin*, 583 S.W.2d 787 (Tex.Crim.App.—1979).

The record reflects that the State was in the process of cross-examining a medical witness, Dr. Grubb, called by the accused. Counsel for the State then asked the witness:

Q All right. Okay, Doctor, at the time of your interview with this Defendant on the 6th day of March, 1980, did you know any of the facts surrounding the shooting that occurred—.

At this point, appellant's counsel objected to any reference to the crime with which defendant was charged. After a brief discussion, the court overruled defendant's objection and the State's attorney continued to question Dr. Grubb. The pertinent parts of the cross-examination follow:

Q Did he tell you the man who was the victim of this event?

A Yes, he did.

Q Did he know his name?

A He had been told his name.

Q Okay. Did he know him prior to this date?

A No, he did not.

Q Okay. Had he ever had any contact with him prior to this date?

A No, he had not.

&ast; &ast; &ast; &ast; &ast; &ast;

Q Okay. Did he tell you about going to the police or the Sheriff's Office earlier that morning in reference a problem at his neighborhood?

A Yes, he did.

Q All right. Did he also tell you about the fact that he was on his property at the time of the shooting? I'm sorry, when—that—that Mr. Hollis was on his own property at the time of this shooting?

A Yes, he did.

Q Okay. Did he also talk to you about his rights to have a weapon on the property where he lives and resides on his property?

A Yes, he did.

Q All right. Did he tell you about the fact that he had a—that the man started walking before him—toward him?

A Yes, he did.

Q All right. Did he tell you that the man had his hands in his pockets?

A Yes, he did.

Q Did he tell you that he felt at that time in fear for his safety and his property and that he reacted at that point?

A Yes, he did.

Q All right. Did he tell you how many times he shot the man?

A Yes, he did.

Q All right. Did he tell you what kind of weapon it was?

A Yes, he did.

Q Did he tell you where he carried the weapon?

A No, he did not specify—

Q Okay. Did he tell you that he carried the police to the weapon?

A Yes, he did.

Q All right. Did he tell you that he had told the police he had shot the man?

A Yes, he did.

Q All right. Did he exhibit to you any type of remorse in the fact that the man was dead?

A No, he did not.

Q Did he tell you, doctor,—did he exhibit or tell you that he was justified or he felt that he was justified in killing the man because he was in fear of his life and his property?

A Yes, he did.

Q All right. Did he tell you about the possession of a large number of weapons in his trailer?

A Yes, he did.

Q Okay. And, uh, did he tell you also that he had had some trouble with his neighbors or the people that were across the street from him, the day before this shooting took place?

A Yes, he did.

Q All right, sir. Doctor, did you see this man today or did you talk to him today for any period of time?

A No, I have not.

Q Okay. Was the condition that you testified to one that's still in existence today in your opinion?

A In my opinion it would most probably be in existence today although I have not examined him today.

Q Okay. Was it your understanding that his condition existed at the time of the shooting back on the 4th day of February, 1980?

A It is my understanding that it did exist.

Q Okay. All right. And I believe you testified that he was above average as far as his intelligence and his ability to relate to you the facts of the case, is—

A That is correct.

■ It has long been established in Texas that a defendant's competency must be determined in a hearing separate from the trial on the merits. *See* Art. 46.02 (Tex. Code Crim.Proc.Ann.1979); *Townsend v. State*, 427 S.W.2d 55, 62 (Tex.Crim.App. 1968); *Guagando v. State*, 41 Tex. 626 (Tex. 1874). The guilt or innocence of the defendant is not at issue in such a hearing, and it is improper to introduce evidence of the offense itself. *Ex parte Hagans*, 558 S.W.2d 457, 461 (Tex.Crim.App.1977); *Townsend v. State, supra* at 63. As the Court of Criminal Appeals stated in *Brandon v. State*, 599 S.W.2d 567, 580 (Tex.Crim. App.1979), "In short, evidence of the crime might adversely affect the determination of competency by confusing the jury in deciding that issue and by arousing unfair prejudice against the accused."

■ Therefore, we conclude that appellant was denied due process because he did not receive a fair hearing upon whether he was competent to stand trial. There is sufficient authority that due process requirements may be fully met if appellant is granted a new trial to determine whether he was competent at the time he was tried and convicted. *See Brandon v. State, supra.* We reverse the judgment that appellant was competent to stand trial and remand the cause with instructions to the trial court to impanel a jury and hold a hearing to determine appellant's competence, as of July 1980, to stand trial.

■ In his fifth ground of error, appellant contends the trial court erred at the competency hearing because it overruled his objections and exceptions to the court's charge. Appellant complains the trial court's charge failed to limit the jury's consideration of the evidence introduced in connection with the offense charged to its bearing upon appellant's mental state and competency to stand trial. We find appellant's fifth ground of error without merit. From the record we conclude that the trial court's charge was sufficient to limit the jury's consideration to competency alone.

In his sixth, seventh, and eighth grounds of error, appellant argues the trial court erred in failing to grant his motion for mistrial because the deceased's bloody vest, shirt, and jeans were displayed before the jury without being admitted into evidence. We overrule these grounds of error.

■ The deceased's clothing was identified by a State's witness, but was not introduced into evidence because the trial court sustained the defense objection that the chain of custody of the clothing had been broken. We feel the items of clothing were admissible without the full chain of custody being shown at trial. When objects are easily identifiable as being a particular item, chain of custody need not be shown if there is direct evidence that the items sought to be introduced into evidence are the same as they were at the scene. *Anderson v. State*, 504 S.W.2d 507, 510 (Tex.Crim. App.1974). Moreover, it appears from the record that photographs of the clothing were introduced without objection. Furthermore, there was no objection that the items were prejudicial at the time the attempt was made to introduce them. *Zillender v. State*, 557 S.W.2d 515, 517 (Tex.Crim. App.1977). In light of the foregoing, we find no error in the display of deceased's unadmitted clothing before the jury. In the event there was error, it was harmless.

■ In his ninth ground of error, appellant contends the trial court erred in failing to hold a *Jackson v. Denno* hearing as requested. We find this ground of error to be

without merit and overrule it. The record reveals that appellant's statement was a res gestae statement; therefore, it was not dependent upon or limited by the rules concerning voluntariness of a confession. See *Hill v. State*, 518 S.W.2d 810, 812 (Tex.Crim. App.1975).

Appellant's tenth ground of error asserts that the trial court committed error when it failed to grant his motion to suppress the weapon. Appellant argues that he merely submitted to the police presence rather than fully consented to deliverance of the weapon to the deputies. A determination of whether a consent to search was voluntary is a question of fact to be determined from a totality of the circumstances. *Nastu v. State*, 589 S.W.2d 434, 440 (Tex.Crim.App.1979) *cert. denied* 447 U.S. 911, 100 S.Ct. 3000, 64 L.Ed.2d 862 (1980); *Brem v. State*, 571 S.W.2d 314, 319 (Tex.Crim.App.1978). In this case, appellant received the *Miranda* warning, and then told the deputies where the gun was located. Appellant's wife went to get the weapon, but was unable to find the correct one. She then showed the deputies to a room where several guns were kept. The deputies asked appellant to show them which one he had used to shoot the deceased and appellant complied. Throughout this process, the record reveals voluntary consent by appellant and his wife, who was not under arrest. The fact that appellant was in custody does not necessarily prevent free and voluntary consent. *Nastu v. State, supra; Armstrong v. State*, 550 S.W.2d 25, 32 (Tex.Crim.App.1976). The tenth ground of error is overruled.

In his last ground of error appellant submits the trial court erred in failing to grant his motion for continuance or delay in the presentation of his case, or in the alternative, motion for mistrial. It appears that during the course of the trial, a proposed State's witness, Don Griffin, who was a Sheriff's deputy, was hospitalized and placed in intensive care. The defense requested a subpoena issue for Griffin during the trial. It was not served under the court's direction because Griffin's doctor

felt that it would be unwise. Motions of this nature are within the sound discretion of the trial court. The failure to grant appellant's motion is not error unless there was an abuse of discretion. *Garcia v. State*, 581 S.W.2d 168, 176 (Tex.Crim.App.1979) *vacated* 453 U.S. 902, 101 S.Ct. 3133, 69 L.Ed.2d 988 (1981). The record clearly shows that any testimony or evidence which Griffin could have offered was before the jury from other sources. We find no abuse of discretion, and overrule appellant's last ground of error.

We abate the appeal and remand the cause to the trial court. We instruct the trial court to impanel a jury within 90 days from the date of this opinion to determine whether appellant was competent to stand trial when he was tried in July 1980. A record of that proceeding shall be prepared in the manner required by Art. 40.09 (Tex. Code Crim.Proc.Ann.1979) and transmitted to this court for further disposition.

It is ordered.