**James Kevin COONS, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**Nos. B14-87-00548-CR, C14-87-00549-CR.**

Court of Appeals of Texas, Houston (14th Dist.).

Aug. 18, 1988.

Kenneth W. Smith, Houston, for appellant.

John B. Holmes, Jr., Kathlyn Giannaula, Houston, for appellee.

Before PAUL PRESSLER, DRAUGHN and ELLIS, JJ.

## OPINION

PAUL PRESSLER, Justice.

Appellant was convicted by a jury of the offenses of aggravated sexual assault and aggravated kidnapping. Punishment was assessed at ninety-nine years and a $10,000 fine for the aggravated sexual assault and ten years and a $5,000 fine for the aggravated kidnapping. We affirm.

No challenge has been made to the sufficiency of the evidence. *Vanderbilt v. State*, 629 S.W.2d 709 (Tex.Crim.App.1981), *cert. denied*, 456 U.S. 910, 102 S.Ct. 1760, 72 L.Ed.2d 169 (1982). Therefore, viewing the evidence in a light most favorable to the verdict, the record shows the following facts:

Just after 4:00 a.m. on September 14, 1986, appellant grabbed the complainant from behind as she was walking from a nightclub to her car on a dimly lit residential street. She attempted to break free and scream but appellant warned her to stop or he would use his knife. She was dragged in a headlock grip to appellant's pickup truck. The complainant's head was forced into appellant's scrotum at various times while he drove her to his apartment. Once appellant stopped the truck and raped the complainant. He had covered his face with an undershirt. When appellant finally stopped the truck, the complainant saw carports around her. He dragged her with a headlock grip onto his patio and into his residence. Once inside the apartment, the complainant was forced to sexually gratify appellant while on her knees. Appellant then left the complainant to retrieve something from another room and the complainant attempted to escape through the sliding glass door. Appellant's dog started to

bark and jumped on her as she entered the patio. Just as she opened the gate, appellant wrestled her back inside and threatened her for her attempt to escape. The complainant was forced to remove her clothing and she was raped. Appellant commanded her to wait while he went upstairs and being afraid of getting caught again, the complainant complied. When appellant returned, he had replaced the undershirt which had been over his face with a camouflage hood. During the following hours, the complainant while naked, bound, and tied, was forced to gratify appellant's sadistic sexual pleasures.

Later, appellant calmed down, smoked a cigarette, and asked complainant for her address and telephone number for "insurance purposes" before he finally untied his victim. He removed the camouflage mask and put his undershirt back over his head and then allowed the complainant to get dressed. The complainant was led back to appellant's truck and again made to lay with her face in his lap but not forced to do anything further. Appellant then began stroking her back and apologized for his behavior. Appellant said that once he grabbed her from the street, he had to carry through with his acts.

Appellant drove her to her car but, before she was allowed to leave, forced her to kiss him on the mouth. In order to accomplish this, appellant lifted his undershirt to above his nose. Complainant was then able to observe that appellant's nose was broad at the base and that he had thin lips and a mole on his cheek.

Once complainant reached home she contacted family members and friends and went to the hospital. She was able to describe the truck, the apartment and its contents, the dog and the camouflage outfit to the police. She also stated that she believed that she could identify her assailant.

Approximately six weeks later, appellant was arrested and placed in a lineup from which the complainant was able to identify him positively. Police subsequently seized a camouflage outfit and other items which matched the complainant's description. The apartment had sliding glass doors, inside were posters and appellant had a dog matching the complainant's description.

In points of error one through six, appellant argues that he was denied effective assistance of counsel. In order to establish relief under a claim of ineffective assistance of counsel, appellant must first show that his counsel erred so seriously that he was not functioning as that "counsel" guaranteed by the constitution. He must then show that his counsel's errors deprived him of a fair trial, and caused a trial the result of which is unreliable. *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Hernandez v. State,* 726 S.W.2d 53 (Tex.Crim. App.1986). In evaluating the first component of the two-pronged test, counsel's competence is presumed. The defendant must rebut this presumption by proving that his attorney's representation was unreasonable under prevailing professional norms, and that the challenged action was not sound trial strategy. *Kimmelman v. Morrison,* 477 U.S. 365, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986). In order to demonstrate reversible error on the second prong of the test, the defendant must demonstrate that, but for counsel's conduct, the result of the proceeding would have been different. *Strickland,* 446 U.S. at 697, 104 S.Ct. at 2069; *Rico v. State,* 707 S.W.2d 549 (Tex.Crim.App.1983). It is not necessary for a court to address both components of the test if the defendant makes an insufficient showing on one. *Strickland,* 446 U.S. at 697, 104 S.Ct. at 2069. A claim of ineffective assistance of counsel based on the counsel's failure to call witnesses must fail in the absence of a showing that such witnesses were available to testify *and* that the defendant would have benefitted from their testimony. *Wilkerson v. State,* 726 S.W.2d 542, 551 (Tex.Crim.App. 1986), *cert. denied,* 480 U.S. 940, 107 S.Ct. 1590, 94 L.Ed.2d 779 (1987); *Butler v. State,* 716 S.W.2d 48, 55 (Tex.Crim.App. 1986).

Here, appellant specifically complains that his counsel failed to call two witnesses whose testimony would have

helped the defense. On July 8, 1987, trial counsel informed the court that he had interviewed these two witnesses several months before trial. During that interview, the witnesses indicated that they were moving and gave counsel their new address. Counsel sent subpoena postcards to the new address prior to trial, but the cards were not returned. Counsel stated he believed that since the cards were not returned, the witnesses had received their subpoenas to attend trial. These witnesses did not appear. The trial court then issued an instanter subpoena but the witnesses were not located. The record does not show whether the address was correct. Appellant has not shown that such witnesses were available or that counsel did not make reasonable attempts to secure their presence. *Schneider v. State,* 645 S.W.2d 463 (Tex.Crim.App.1983). The record also does not contain any affidavits describing what testimony these missing witnesses would have given except that when trial counsel requested the instanter subpoena, he informed the court he believed the witnesses' testimony would show:

> [t]hey had never heard or observed any type of untoward activity in the apartment below: that the ceiling—that their floor, [appellant's] ceiling, was very thin; that they had on occasion complained about noise in his apartment and they're very sensitive to that effect.

Assuming that the missing witnesses would have so testified, there is still no showing that the witnesses were at their apartment at the time of the offense. There is also no showing that their failure to hear "untoward activity" from appellant's apartment had any relevance to any issue in the case. Appellant has not shown prejudice. *Morris v. State,* 696 S.W.2d 616 (Tex.App.—Houston [14th Dist.] 1985), *aff'd,* 739 S.W.2d 63 (Tex.Crim.App.1987).

Appellant also complains of counsel's failure to present the testimony of a Mr. Randolph who was a security guard on patrol at the complex at the time of the offense. Defense counsel stated that he had attempted to contact this witness, but the employer misled counsel as to the witness' identity. When counsel finally discovered the identity of Mr. Randolph, the security service would not provide further information without a subpoena. The trial court denied counsel's request for a delay of the trial and for the subpoena but allowed the introduction of Mr. Randolph's security report made on the evening of the offense. According to the report, Mr. Randolph had driven through the property at 3:45 and at 5:00 a.m. No unusual activity was reported. However, it was established that the guard would have been on the property only about ten minutes. There is nothing in the record to show Randolph's whereabouts nor that he was actually present at the time of the offense. Even if the security guard had been near appellant's apartment, it was not clear that he could have known that the assault was taking place. Appellant has failed to show that Mr. Randolph was available to testify or that his testimony would have benefitted the defense. The record supports a finding that counsel made reasonable efforts to locate the witness.

Appellant next argues that counsel was ineffective for failing to provide his expert witness with hair specimens which were recovered as evidence. Prior to trial, a motion for discovery of all evidence relating to the case was granted. The state agreed to accompany defense counsel to the Houston police department to examine all evidence obtained by the search warrant or submitted in the rape kit.

Mrs. Kim, a chemist in the Serology department, testified to the rape kit evidence submitted to the Houston police department laboratory. She stated that the hair samples were transferred to one of her co-workers, Ms. Hilleman, and that she did not know the results of any analysis on those samples. After this testimony, the state rested. The next day, counsel requested any additional evidence in the state's possession. Counsel specifically requested the state to produce the reports of any tests made on hair samples taken from appellant. The court allowed an instanter subpoena for Ms. Hilleman. Ms. Hilleman was on vacation and defense counsel recalled Ms. Kim to the stand. Ms. Kim

stated that no report could be found regarding any test on the hair samples. She also testified that the samples could not be found, but if the preliminary test showed that the samples belonged to the victim, no further testing would be done. Appellant now says that counsel was ineffective in failing to call Ms. Hilleman as witness either at trial or at the hearing on the motion for new trial. The record shows that the witness was not available at trial. There is no evidence that any tests were performed on the hair samples or, if performed, that such results were exculpatory. *See Vertz v. State,* 686 S.W.2d 696, 702 (Tex.App.—Corpus Christi 1985, pet. ref'd), *cert. denied,* 479 U.S. 830, 107 S.Ct. 114, 93 L.Ed. 2d 61 (1986). Likewise, appellant's contention that trial counsel failed to provide hair samples to his expert for testing is without merit. There is no evidence as to which results such testing would have produced. Without such evidence, the value of such testimony is merely speculative. *Mercado v. State,* 615 S.W.2d 225 (Tex.Crim.App. 1981).

Appellant next complains of ineffective assistance of counsel because he failed to warn a potential witness, Miss Rehder, of the consequences of violating the witness sequestration rule. According to appellant, the witness was prevented from testifying to the following during the guilt innocence phase: that she had known him for five years, she had dated him, they were good friends, there existed a landmark at the apartment the complainant had failed to see, and that appellant had used the camouflage mask to keep out insects when hunting. Neither using his camouflage mask for hunting nor the complainant's forgetting some details are inconsistent with appellant being guilty. *Morris,* 696 S.W.2d at 620. Appellant has failed to show that "but for" omission of the witnesses' testimony, the result would have been different.

Appellant also argues that trial counsel's failure to introduce this testimony at the punishment phase prejudiced him. Appellant contends that his testimony would have enabled the jury to see his human, compassionate side. Because this complaint deals with the punishment phase of trial, *Strickland* does not apply. *Ex Parte Cruz,* 739 S.W.2d 53 (Tex.Crim.App. 1987). The sufficiency of counsel's performance is gauged by the totality of representation of the accused. *Ex Parte Cruz,* 739 S.W.2d at 58. Trial counsel called appellant's sister to testify at the punishment stage. This witness testified that appellant had had a long and caring relationship with Miss Rehder and that he had never hurt her. The omitted evidence would merely have corroborated appellant's sister's statements. The failure to present such evidence does not establish ineffective assistance of counsel. *U.S. v. Cockrell,* 720 F.2d 1423, 1428 (5th Cir. 1983), *cert. denied,* 467 U.S. 1251, 104 S.Ct. 3534, 82 L.Ed.2d 839 (1984).

Appellant finally contends that the lower court abused its discretion in failing to allow a continuance so that missing witnesses could be found. The record contains no sworn motion for continuance or for a new trial. There is no affidavit from a witness who was missing. Therefore, nothing has been preserved for review. *Minx v. State,* 615 S.W.2d 748 (Tex.Crim. App.1981). *See also* Tex.R.App.P. 50(d). Ineffective assistance of counsel has not been shown. There is no showing that the trial court abused its discretion. Points of error one through six are overruled.

In point of error seven, appellant asserts that the lower court abused its discretion in excluding Miss Rehder's testimony on the basis of her violation of the witness sequestration rule. The rule was invoked before the state called its first witness. The defense counsel told the court that he had no witnesses present that day. The trial court requested that all witnesses present be sworn and admonished them to stay outside the courtroom when other witnesses were testifying. It is uncertain when Miss Rehder entered the courtroom, but, she admitted that she was present when the complainant gave her testimony. The evidence Ms. Rehder was to offer was intended to contradict or impeach the complainant. In similar situa-

tions it has been held not to be an abuse of discretion to enforce the rule. *O'Dell v. State,* 467 S.W.2d 444 (Tex.Crim.App.1971); *Miller v. State,* 455 S.W.2d 253 (Tex.Crim. App.1970). The excluded evidence was not crucial to appellant's defense. There was no abuse of discretion. *Bates v. State,* 587 S.W.2d 121 (Tex.Crim.App.1979); *Cooper v. State,* 578 S.W.2d 401, 403 (Tex.Crim.App. 1979); TEX.R.CRIM.EVID. 613. Point of error seven is overruled.

In points of error eight through twelve, appellant complains that he was denied due process and the right to confront witnesses against him. This was based upon a pretrial conference in which the complainant was possibly exposed to the testimony of another complainant in a different case. He further alleges that the lower court erred in not excluding the complainant's testimony because of that event.

Prior to trial, appellant's counsel filed a motion to strike the complainant's testimony "due to prosecutorial misconduct." Counsel's unsworn motion alleged that the state had held a pretrial conference with the complainant here and the complainant in a different case. Counsel contended that the complainant heard incidents from the other complainant's case which might have bolstered her story.

Appellant contends that harm results because he could not cross-examine the complainant about this pretrial hearing without the jury's hearing that there were possibly other victims.

At the time of the event, the trial had not begun and the rule was not invoked. Therefore, the witness' testimony should not have been excluded. *Creel v. State,* 493 S.W.2d 814 (Tex.Crim.App.1973); *U.S. v. Lamp,* 779 F.2d 1088 (5th Cir.), *cert. denied,* 476 U.S. 1144, 106 S.Ct. 2255, 90 L.Ed.2d 700 (1986); TEX.R.CRIM.EVID. 613. The complainant never testified about the pretrial conference and the other complainant was not called as a witness. There is nothing in the record to show that such a conference occurred or, if it did, what was discussed. Counsel never alleged any specific misconduct but only hypothetical harm. His being concerned that the jury would hear damaging evidence if he cross-examined the complainant did not prevent him from making a bill outside the jury's presence. Appellant has failed to bring forward a record sufficient to show reversible error. TEX.R.APP.P. 50(d). Points eight through twelve are overruled.

In point of error thirteen, appellant argues that the jury charge contained fundamental error in that it contained an instruction on good time and parole under Article 37.07, section 4 of Texas Code of Criminal Procedure. This instruction has been found to be violative of the separation of powers doctrine and due process of law. *Rose v. State,* 752 S.W.2d 529 (Tex.Crim. App.1988). On rehearing, the court in *Rose* changed the standard of review from a two-tier, objected-to and unobjected-to, harm analysis to an across the board "statutory" analysis under Rule 81(b)(2) of the Texas Rules of Appellate Procedure. Pursuant to Rule 81(b)(2), if the record reveals error, the judgment shall be reversed unless such error was harmless beyond a reasonable doubt.

Appellant was convicted of and sentenced for aggravated sexual assault and aggravated kidnapping. After reading the statutory parole instruction, the trial judge also read the jury the following instruction:

> You are not to discuss among yourselves how long the accused would be required to serve the sentence that you impose. Such matters come within the exclusive jurisdiction of the Board of Pardons and Paroles and the Governor of the State of Texas, and must not be considered by you.

In the absence of proof to the contrary, it is presumed that a jury follows the instructions given by the judge. *Cobarrubio v. State,* 675 S.W.2d 749 (Tex.Crim.App.1983). *See also Gardner v. State,* 730 S.W.2d 675 (Tex.Crim.App.), *cert. denied,* — U.S. —, 108 S.Ct. 248, 98 L.Ed.2d 206 (1987). Appellant does not demonstrate that the jury failed to follow this instruction. The fact that appellant's sentences were actually lower than the maximum punishments requested by the state indicates that the jury followed the instruction.

The facts of this offense mitigate in favor of the assessed punishment. The evidence shows a calculated and tortuous kidnapping and series of sexual assaults that lasted for at least two hours. During that time, the victim was physically, psychologically and sexually abused. Although the state, in passing, stated that the parole law applies to every punishment assessed in the State of Texas, the jury was in no way encouraged to consider the parole law in assessing of punishment.

The foregoing demonstrates that the erroneous instruction did not affect appellant's sentence. The error in submitting the instruction was harmless beyond a reasonable doubt, and it made no contribution to the punishment assessed. TEX.R.APP.P. 81(b)(2). Point of error thirteen is overruled.

In point of error fourteen, appellant complains of the following argument made by the prosecutor during the punishment phase of the trial:

> [L]adies and gentlemen, you have all the evidence. I know today you can't pull [sic] all the things or aspects of it. You can do most of what you can do, some of what you can do or all of what you can do to rid our society and make sure it's as long as possible till [sic] this defendant applies his trade again with these tools. What in the world has this defendant learned from this experience? Kill the victim the next time. You don't enjoy killing them first without torture ...

Appellant contends that this argument was prejudicial and was unsupported by the evidence. In *Phillips v. State,* 701 S.W.2d 875 (Tex.Crim.App.1985), the court enumerated four areas of permissible jury argument as (1) a summation of the evidence; (2) a reasonable deduction from the evidence; (3) an answer to the argument of opposing counsel; or (4) a plea for law enforcement. *Phillips,* 701 S.W.2d at 892.

This argument was a deduction from the evidence. The complainant stated she felt her life was at risk if she did not succumb to her captor's demands. Appellant repeatedly accused her of planning to tell police about him, and she repeatedly had to promise him she did not see his face. The complainant testified that she understood his question about her residence to mean that if she went to the police, he would find her and possibly kill her. Given the meticulous care appellant took to prevent his face from being identified, the threats made upon his victim and his barbaric treatment of her, it was reasonable to argue that he had probably learned that the "best insurance" for never getting caught would be to kill the next victim. *Cf. Rudd v. State,* 616 S.W.2d 623 (Tex. Crim.App.1981). The trial court sustained appellant's objection and instructed the jury to disregard this statement. Thus any error was cured. *Hudson v. State,* 675 S.W.2d 507 (Tex.Crim.App.1984); *Livingston v. State,* 531 S.W.2d 821 (Tex.Crim. App.1976); *Hollis v. State,* 633 S.W.2d 947 (Tex.App.—Tyler 1982, pet. ref'd). Point of error fourteen is overruled.

In point of error fifteen, appellant also complains of the following jury argument:

> I asked the jurors to imagine a hypothetical situation they may have with their spouse or co-worker or neighbor concerning the evidence that they heard and concerning the outrage that the people in Harris County would feel of [sic] a case like this. When you consider the evidence, when you get to discuss this case with your spouse, your neighbors, the people you work with, they ask what you've been doing on jury duty, 'Well, we heard a case of a Defendant charged with aggravated sexual assault, aggravated kidnapping. We found him guilty. Then we had to assess punishment. Wait a minute. Why, Mr. Juror, why don't you tell me the facts of the abduction? An attractive young woman was abducted off a street. She was about to complete her master's degree in dietetics. Abducted her off the street to perform oral sex. Hold it. Just a second. You must have given that individual life, all you could have given. Hold a second, friend, neighbors. After that, he ejaculated, raped her. You must have given

> him a fine of $10,000 and life. That ain't even the tip of the iceberg. He forced the victim to put his testicles in her mouth at the same time, drove her to his apartment, put a hood on his head, tied her up, tied her hands behind her back, tied a telephone cord around her breasts. Hold it a second. You must have assessed the maximum. Wait a second. That settles it all. He anally [sic] forced her to lick his anus. How could you explain to another citizen, anyone who you respect in this court, how you gave this creature anything less than life in prison, $10,000 fine and 20 years and a $10,000 fine?

Appellant argues that this argument is improper because it calls for a community verdict expressly disallowed under *Cortez v. State,* 683 S.W.2d 419 (Tex.Crim.App. 1984) and *Prado v. State,* 626 S.W.2d 775 (Tex.Crim.App.1982). Appellant did not object to the above argument and has thus failed to preserve error for review. *Drew v. State,* 743 S.W.2d 207 (Tex.Crim.App. 1987). Further, even if error had been properly preserved, this argument is similar to the argument upheld in *Whittington v. State,* 580 S.W.2d 845, 847 (Tex.Crim. App.1979) (asking the jury to give a verdict they, their friends and neighbors can be proud of). *See also Bell v. State,* 707 S.W.2d 52, 74 (Tex.Crim.App.1986) (republished at 724 S.W.2d 780, 801). Here, as in *Whittington,* the prosecutor's argument was a permissible plea for law enforcement. The jury was not asked to convict or punish based upon public sentiment.

Appellant also argues that the cumulative effect of the complained of arguments in points of error fourteen and fifteen denied him a fair trial. Such arguments have been found to be proper. Appellant has not shown how he was denied a fair trial. *Cf. Miller v. State,* 741 S.W.2d 382 (Tex. Crim.App.1987). Point of error fifteen is overruled.

In points of error sixteen and seventeen, appellant alleges that he was convicted under a fundamentally defective indictment because the indictment does not allege an element of aggravated sexual assault and, for this reason, a variance exists between the offense charged in the indictment and the punishment assessed. The indictment at issue states, in part, that appellant did:

> intentionally and knowingly by use of physical force and violence and by threatening the present use of force and violence against [complainant], not the spouse of defendant ... cause the penetration of the mouth of the complainant with the sexual organ of the defendant and without the consent of the complainant and by acts, and words, the defendant placed the complainant in fear that death and serious bodily injury would be inflicted on the complainant.

Appellant specifically contends that the indictment does not allege aggravated sexual assault because it does not state that his victim was placed in fear that death and/or serious bodily injury would be *imminently* inflicted. Tex.Penal Code Ann. § 22.021(a)(2) (Vernon 1988). Use of the word "imminently" was not necessary in this instance because the indictment, read as a whole, supplies that element. *Accord King v. State,* 675 S.W.2d 514 (Tex.Crim. App.1984). *See Murphy v. State,* 665 S.W. 2d 116 (Tex.Crim.App.1983), *cert. denied,* 469 U.S. 821, 105 S.Ct. 93, 83 L.Ed.2d 40 (1984); *Dennis v. State,* 647 S.W.2d 275 (Tex.Crim.App.1983). *See also Jackson v. State,* 700 S.W.2d 704 (Tex.App.—Houston [1st Dist.] 1985, no pet.). Points of error sixteen and seventeen are overruled.

In point of error eighteen, appellant contends that the lower court erred in disposing of his motion for new trial in his absence.

Counsel filed a motion for new trial and an evidentiary hearing on August 7. These motions were denied by the trial court on September 18. Trial counsel, but not appellant, was present when the motion was denied. Appellant now argues that he was entitled to be present because the motion for a new trial is a critical stage of the proceedings which entitled him to be present. Appellant alleges that he was in custody at the time this motion was ruled

upon. Therefore, his absence was not a voluntary waiver.

The right to be present at trial and confront witnesses is fundamental and essential to a fair trial. *Pointer v. Texas,* 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965); *Kirby v. U.S.,* 174 U.S. 47, 19 S.Ct. 574, 43 L.Ed. 890 (1899). That right is protected by Article 1, section 10 of the Texas Constitution and the sixth amendment of the U.S. Constitution. *Pointer v. Texas,* 380 U.S. at 413, 85 S.Ct. at 1073. The defendant's right of attendance also includes a hearing on a motion for new trial. *See* Texas Code Crim.Pro.Ann. art. 33.03 (Vernon Supp.1988). A defendant, however, may waive his right to be present at a motion for new trial. *Phillips v. State,* 163 Tex.Crim. 13, 288 S.W.2d 775 (1956). Reversal is required only where the defendant desires to be present at the hearing and is denied that right. *Jackson v. State,* 379 S.W.2d 896 (Tex.Crim.App. 1964); *Lacy v. State,* 374 S.W.2d 244 (Tex. Crim.App.1963). The record does not reflect that appellant requested to be present or that he was denied that right. It does not appear that appellant or his counsel objected to the court's having the hearing in his absence. The order overruling the motion noted that trial counsel was present and ready to proceed. The defendant was not shown to have been prevented from attending any hearing. *See Johnson v. State,* 289 S.W.2d 249 (Tex.Crim.App.1956). The mere fact that appellant was in custody did not prevent his attendance. Trial counsel could have requested a bench warrant. Tex.Code Crim.Pro.Ann. art. 24.13 (Vernon 1966). The motion presented questions which could be resolved from the record. None of the allegations were supported by affidavits. *See Schneider v. State,* 594 S.W.2d 415 (Tex.Crim.App.1980). In order for the trial court to consider a motion based upon allegations not in evidence, the motion must be supported by an affidavit. *McIntire v. State,* 698 S.W.2d 652 (Tex.Crim.App.1985); *Fielding v. State,* 719 S.W.2d 361 (Tex.App.—Dallas 1986, pet. ref'd). Because appellant's motion was not supported by an affidavit, it was properly overruled without an evidentiary hearing. *See and compare McIntire,* 698 S.W.2d at 658. Appellant's presence was not required. *Cf. Bumpus v. State,* 509 S.W.2d 359 (Tex.Crim.App.1974). Point of error eighteen is overruled.

The judgment is affirmed.