IN THE COURT OF CRIMINAL APPEALS


OF TEXAS






NO. 1919-02






THE STATE OF TEXAS



v.



MATTHEW MEDRANO, Appellee





ON DISCRETIONARY REVIEW


FROM THE EIGHTH COURT OF APPEALS


EL PASO COUNTY






 Womack, J., filed a concurring opinion.



 I agree with the Court's decision to affirm the courts below in excluding the
evidence of the hypnotized witness. I also agree that we should adhere to the Court's
decision in Zani, (1) even though it assigns a higher burden to the proponent of such evidence
than the burden on the proponent of scientific evidence.

 The reason that the burdens are different is that the question in the hypnosis cases is
different from the questions that were presented in Frye, (2) Kelly, (3) or Daubert. (4) Those cases
involve the admissibility of scientific evidence, specifically experimental data or expert
opinion about the results of scientific tests. Cases like the one that is now before us do not
involve the admissibility of such evidence. The issue in these cases is the competency of a
lay witness to testify about his or her memory of events that he or she perceived. The
question is the extent to which hypnosis has affected the reliability of the witness's
memory. The standards of the scientific-evidence cases can do no more than inform a
court's decision about the admissibility of the witness's testimony. (5)

 For these reasons, I agree with Judge Cochran that it was inappropriate to import
into our scientific-evidence decisions the "clear-and-convincing" burden of Zani. (6) I would
conform to Daubert the burden of Kelly, but not the burden of Zani.

 Zani was correct not only in imposing a higher burden, but also in adopting a
flexible standard that can take into view "the totality of the circumstances" of the case to
consider whether "that hypnosis neither rendered the witness' posthypnotic memory
untrustworthy nor substantially impaired the ability of the opponent fairly to test the
witness recall by cross[-]examination." (7) As another court has put it:

 The district court must then determine whether in view of all the circumstances, the proposed testimony is sufficiently reliable and whether its
probative value outweighs [the danger of] its prejudicial effect, if any, to
warrant admission. Ultimately the district court must decide whether the risk
that the testimony reflects a distorted memory is so great that the probative
value of the testimony is destroyed. (8)



 In Zani we quoted a long, but non-exclusive, list of circumstances. (9) Others could 
always be added, such as a consideration of the purpose for the hypnosis (10) and evidence of
the witness's "hypnotizability." (11) On these circumstances, expert opinion may be relevant. (12)


En banc.

Date filed February 4, 2004 .

Publish.
1. Zani v. State, 758 S.W.2d 333 (Tex. Cr. App. 1988).
2. Frye v. United States, 293 F. 1013 (D.C. Cir. 1923).
3. Kelly v. State, 824 S.W.2d 568 (Tex. Cr. App. 1992).
4. Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993).
5. See Borawick v. Shay, 68 F.3d 597, 610 (2d Cir. 1994). 
6. Post, at 4-5 (Cochran, J., concurring).
7. Zani, 758 S.W.2d, at 244.
8. Sprynczynatyk v. General Motors Corp., 777 F.2d 1112, 1123 (8th Cir. 1985).
9. "[T]he level of training in the clinical uses and forensic applications of hypnosis by the person
performing the hypnosis; the hypnotist's independence from law enforcement investigators,
prosecution, and defense; the existence of a record of any information given or known by the hypnotist
concerning the case prior to the hypnosis session; the existence of a written or recorded account of the
facts as the hypnosis subject remembers them prior to undergoing hypnosis; the creation of recordings
of all contacts between the hypnotist and the subject; the presence of persons other than the hypnotist
and the subject during any phase of the hypnosis session, as well as the location of the session; the
appropriateness of the induction and memory retrieval techniques used; the appropriateness of using
hypnosis for the kind of memory loss involved; and the existence of any evidence to corroborate the
hypnotically-enhanced testimony." 758 S.W.2d, at 243 (quoting People v. Romero, 745 P.2d 1003,
1017 (Colo. 1987)).
10. Borawick, 68 F.3d at 608 ("whether it was to refresh a witness's memory of an accident or
crime or whether it was conducted as part of therapy. In the former instance, the subject may feel
pressured to remember details, to aid the criminal investigation, whereas when the subject has
undergone therapy to explore the sources of her psychological ailments, she may be less inclined to
confabulate or describe a complete coherent story. In the latter case, however, the court should be
mindful of the possibility that the subject may have received subtle suggestions from her therapist that
abuse or other traumas could be at the root of her problems").
11. Ibid.
12. Ibid.